**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| X CORP., | CIVIL ACTION NO. |
| *Petitioner*, | |
| v. | DISTRICT JUDGE: |
| JAN LORENZ SOLIMAN, | |
| *Respondent*. | MAGISTRATE: |

## PETITION TO COMPEL ARBITRATION

Petitioner X Corp. ("X") respectfully petitions this Court pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, for an order compelling Respondent Jan Lorenz Soliman to arbitrate certain claims before Judicial Arbitration and Mediation Services ("JAMS") within 45 miles of where he remotely reported to work in Gretna, Louisiana, as required by Sections 3 and 5 of the parties' Dispute Resolution Agreement ("DRA") (attached as Exhibit 1), and to pay his respective pro rata share of the arbitration fees as required by Section 6 of the DRA unless and until the individual arbitrator presiding over the arbitration orders a different apportionment. In support of its petition, X states as follows:

## INTRODUCTION

1.      The FAA requires courts to "rigorously … enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). That principle controls here. When Respondent began working for X's predecessor Twitter, Inc. ("Twitter"), he entered into an arbitration agreement that explicitly provides that arbitration of Respondent's claims "shall be [held] no more than 45 miles

from the place where the Employee reported to work for [Twitter]," DRA §3, and that all arbitration fees "will be apportioned between the parties" unless the law requires otherwise, DRA §6. Respondent has now sought arbitration under that agreement—but has failed to comply with both of these terms of the agreement.

2.     First, Respondent has filed a demand requesting that his arbitration be held in San Jose, California, which is "more than 45 miles from the place where [Respondent] reported to work for [Twitter]" here in Louisiana. DRA §3. Second, Respondent refuses to pay his individual share of the arbitration fees, instead asserting that X must pay the entire amount of those fees after the first $400.

3.     X is accordingly "aggrieved by" Respondent's "failure, neglect, [and] refusal … to arbitrate under [the parties'] written agreement for arbitration," and is entitled to "an order directing that [the] arbitration proceed in the manner provided for" in the DRA. 9 U.S.C. §4. In particular, X is entitled to an order directing Respondent to arbitrate his claims in Louisiana according to the express terms of the DRA, including by paying his individual share of the arbitration fees as required by the DRA. This Court should grant the petition, compel Respondent Jan Lorenz Soliman to pursue his claims individually in arbitration here in Louisiana according to the terms of the DRA, and order him to pay his respective pro rata shares of the arbitration fees as required by Section 6 of the DRA unless and until the individual arbitrator presiding over the arbitration orders a different apportionment.

## JURISDICTION AND VENUE

4.     This suit is brought under Section 4 of the FAA, 9 U.S.C. §4. Although Section 4 does not itself create federal jurisdiction, it empowers federal courts to compel arbitration in cases where they "would have jurisdiction … of the subject matter of a suit arising out of the controversy

2

between the parties." 9 U.S.C. §4. The Supreme Court has accordingly instructed that to assess subject-matter jurisdiction over a petition to compel arbitration under Section 4, this Court must "look through" the Section 4 petition to the underlying controversy. *Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009).

5. Applying that analysis here, this Court has federal-question jurisdiction over the underlying controversy under 28 U.S.C. §1331, because Respondent raised an underlying claim that arises under federal law. In particular, Respondent raised a claim under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101, *et seq.*, among others, related to his employment with Twitter. Because this Court would have subject-matter jurisdiction over a lawsuit asserting this federal claim under 28 U.S.C. §1331, this Court likewise has jurisdiction over this Section 4 petition.

6. The Court also has diversity jurisdiction over the underlying controversy under 28 U.S.C. §1332(a). As described below, X and Respondent are citizens of different states, establishing complete diversity. And, on information and belief based on the nature of Respondent's claims and his employment position at Twitter, the amount in controversy in the underlying disputes with Respondent exceeds $75,000.

7. Venue is appropriate in this district under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this petition occurred in this district, including because Respondent, on information and belief, resided in this District at the time that his employment with Twitter ended, and because Respondent's DRA provides that his underlying claims concerning his employment are to be settled by binding arbitration in a proceeding that is "no more than 45 miles from the place where [Respondent] reported to work for [Twitter]," DRA §3, which is within this District.

## PARTIES

8.      Petitioner X is a corporation that is organized under the laws of the State of Nevada and has its principal place of business in Texas.  The corporate headquarters of X is located at 865 FM 1209 Building 2 in Bastrop, Texas, which is located in the Western District of Texas.  From the Western District of Texas, X's Controlling Shareholder, Chief Technology Officer, and Executive Chairman Elon Musk directs, controls, and coordinates X's activities, and the Western District of Texas is also where the majority of X's chief executive functions are performed.  To the extent these executive functions are performed outside the Western District of Texas, they are mostly performed in the Southern District of New York, where X's Chief Executive Officer, Linda Yaccarino, is based.  X is the successor entity to Twitter, which was renamed in July 2023 following Mr. Musk's acquisition of the company.

9.      Respondent Jan Lorenz Soliman is a former employee of Twitter, who worked at Twitter as a Software Engineer II and was employed there from December 2, 2019, to November 4, 2022.  On information and belief, Soliman, who was initially hired in California, was a remote worker who began working from Gretna, Louisiana, by May 2021, and continued doing so until the time that his employment with Twitter ended.  On information and belief, Soliman is now a citizen of the State of California.  A true and correct copy of Soliman's signed DRA is attached to this Petition as Exhibit 1, and a true and correct copy of Soliman's arbitration demand is attached to this Petition as Exhibit 2.

## BACKGROUND

**A.      The Parties Entered Into An Enforceable Arbitration Agreement.**

10.      When Respondent joined the company, Twitter sent him its standard dispute resolution agreement—the DRA—which governs the resolution of "any dispute arising out of or

related to [Respondent's] employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies … or termination of employment, and survives after the employment relationship terminates."  DRA §1.  This DRA was offered to every employee who worked at Twitter.

11.    As the DRA explains, Respondent had the right to opt out of the DRA by sending an opt-out form to Twitter's human resources department.  DRA §8.  In fact, the DRA emphatically states in three separate locations that Twitter employees were entitled to opt out of the arbitration agreement, ensuring that employees would understand that arbitration was not a mandatory condition of their employment with Twitter.  The DRA begins by stating (in bold font) that an employee "**can choose to opt out of this Agreement**" and has **"30 days to opt out."**  DRA at 1. The DRA then later explains (again in bold font) that "**[a]rbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.**"  DRA §8. Finally, immediately above the employee signature line, the DRA states (again in bold font) that "**By signing below, I … confirm I am aware of my right to opt out per the terms of this Agreement**."  DRA at 3.  Various former Twitter employees followed the procedure set forth in the DRA to opt out of that agreement.

12.    Respondent, by contrast, never exercised his option to opt out of the DRA, and is therefore bound by its terms.

13.    The DRA is "governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq. and evidences a transaction involving commerce."  DRA §1.  "If the FAA is found not to apply," the DRA "is enforceable under the laws of the state" in which the employee is employed upon entering into the agreement.  *Id.*

14.     Under the DRA, "all covered disputes" must be resolved "only by an arbitrator through final and binding arbitration and not by way of court or jury trial."  DRA §1.

15.     The DRA provides that "the arbitration proceeding shall be no more than 45 miles from the place where [Respondent] reported to work for [Twitter], unless each party to the arbitration agrees in writing otherwise."  DRA §3.

16.     The DRA further provides that the parties will "bring any claim in arbitration before [JAMS], pursuant to the then-current JAMS Rules," defined to mean "the then-current JAMS Employment Arbitration Rules and Procedures."  DRA §§3, 5.  The JAMS Employment Rules govern the selection of the arbitrator if the parties do not otherwise mutually agree, as well as the "discovery and arbitration hearing procedures."  DRA §§3, 5.  The DRA does not incorporate or refer to any of JAMS's other rules or policies, including JAMS's Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards").  On the contrary, the DRA itself is "the full and complete agreement relating to the formal resolution of covered disputes."  DRA §10.

17.     The DRA also expressly allocates responsibility for paying any arbitration fees. Section 6 of the DRA, entitled "Paying For The Arbitration," provides:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law.  However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees.  *If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.*

DRA §6 (emphasis added).  In other words, under the plain terms of the DRA, X is required to pay all of the arbitration fees only "where required by law"; otherwise, "[i]f under applicable law [X] is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned

between the parties in accordance with said applicable law." *Id.*  The DRA also incorporates JAMS Employment Rule 31(a), *see* DRA §5 (adopting "the then-current JAMS Rules"), under which the default rule for non-mandatory agreements is that "unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees."  JAMS Employment Rule 31(a).

**B.    Respondent Seeks Arbitration Without Complying With The Terms Of The DRA.**

18.    After the acquisition of Twitter in October 2022, X began restructuring its workforce and operations, resulting in multiple reductions in force that affected many former employees, including Respondent.

19.    X offered Respondent significant severance benefits in exchange for a general release of claims.  Respondent, however, declined that offer.  Instead, like over 2,200 former Twitter employees, he opted to file a demand for arbitration against X before JAMS.

20.    Although Section 3 of the DRA provides that "[t]he location of the arbitration proceeding *shall* be no more than 45 miles from the place where [Respondent] reported to work for [Twitter]," DRA §3 (emphasis added)—here, Gretna, Louisiana, where Respondent worked at the time his employment with Twitter ended—Respondent's arbitration demand requested a hearing in San Jose, California, in violation of the 45-mile requirement.

21.    After Respondent filed his arbitration demands with JAMS, JAMS issued a non-refundable filing fee invoice, which aggregated the costs arising from Respondent's individual arbitration demand and the demands of several other out-of-state former employees of Twitter, and which became due on March 27, 2025. On March 25, 2025, X's counsel reached out to Respondent's counsel by email to confirm whether Respondent would pay his respective share of the outstanding invoice as required by the DRA.

22.    Respondent's counsel responded by email on March 25, 2025, stating that Respondent would not pay more than the first $400 of the $2,000 initiation fee for his arbitration demand, and that (despite the contrary terms of the DRA) Respondent expected X to pay all of the arbitration fees beyond that initial $400.

## CLAIMS FOR RELIEF

### COUNT ONE
### Order to Compel Arbitration Under the DRA
### 9 U.S.C. §4

23.    Petitioner incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

24.    By its terms, the DRA "is governed by" the FAA. DRA §1. Under the FAA, courts must "rigorously … enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys.*, 584 U.S. at 506. If an arbitration agreement is valid and covers the parties' dispute, then under Section 4 of the FAA, a court "shall" order the parties "to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. §4. That principle controls here and requires an order compelling Respondent to arbitrate in accordance with the terms of the DRA.

25.    In filing his arbitration demand, Respondent has already conceded that the DRA is a valid and enforceable agreement to arbitrate and that it encompasses his individual claims. But Respondent has nevertheless refused to comply with the DRA. In particular, he has requested that his arbitration be held in California, which is "more than 45 miles from the place where [Respondent] reported to work for [Twitter]" here in Louisiana, DRA §3, and has refused to pay

his full individual share of the arbitration fees, in violation of the explicit DRA provision requiring that arbitration fees "will be apportioned between the parties," DRA §6.

26.    Under Section 3 of the DRA, "[t]he location of the arbitration proceeding shall be no more than 45 miles from the place where [Respondent] reported to work for [Twitter], unless each party to the arbitration agrees in writing otherwise."  DRA §3.

27.    Here, X has not waived this provision and has not agreed to hold Respondent's arbitration outside of that 45-mile radius.  As a result, under the plain terms of the DRA, Respondent must seek to have his arbitration proceed "no more than 45 miles from the place where [he] reported to work," which is Gretna, Louisiana, the location where he was working remotely at the time he was terminated from his employment with Twitter.  DRA §3.  Respondent's decision to seek arbitration in California therefore violates the parties' agreement to arbitrate under the terms of the DRA.

28.    Respondent's refusal to pay his share of the arbitration fees also violates the DRA. Under Section 6 of the DRA, X "will pay the Arbitrator's and arbitration fees" in "all cases where required by law."  DRA §6.  In all other cases—i.e., "[i]f under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees"—those fees "will be apportioned between the parties in accordance with said applicable law."  DRA §6.

29.    Here, applicable law does not require X to pay all of the arbitration fees.  As a result, under the plain terms of the DRA, the arbitration fees must be "apportioned between the parties."  DRA §6.  Respondent's refusal to pay his share of those fees therefore violates the parties' agreement.

30.    Under Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition … for an order

directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §4. X is "aggrieved by" Respondent's "failure … or refusal" to arbitrate in accordance with the terms of the DRA—in particular, Respondent's attempt to arbitrate more than 45 miles from Gretna, Louisiana, where he reported to work remotely for Twitter, and his refusal to pay his share of the arbitration fees. *Id.* X is accordingly entitled to an order requiring Respondent to arbitrate "in accordance with the terms of" the DRA, including its location-selection and fee-sharing provisions. *Id.*

## REQUESTED RELIEF

For the foregoing reasons, X respectfully requests that this Court:

a.    Enter an order compelling Respondent Jan Lorenz Soliman to individually arbitrate his claims against X before JAMS within 45 miles of Gretna, Louisiana, as required by Section 3 of the DRA;

b.    Enter an order directing Respondent Jan Lorenz Soliman to pay his pro rata share of the arbitration fees as required by Section 6 of the DRA, unless and until the individual arbitrator presiding over the arbitration orders a different apportionment; and

c.    Grant X all other such relief as the Court may deem just and proper.

Dated: May 27, 2025                             Respectfully submitted,

/s/Richard C. Stanley
Richard C. Stanley (No. 8487)
Brandon A. Naquin (No. 39998)
STANLEY REUTER ALFORD
    OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112
Telephone: (504) 523-1580
rcs@stanleyreuter.com
ban@stanleyreuter.com

                    - and -

Paul D. Clement (*pro hac vice* forthcoming)
C. Harker Rhodes IV (*pro hac vice* forthcoming)
Mitchell K. Pallaki (*pro hac vice* forthcoming)
CLEMENT & MURPHY PLLC
706 Duke Street
Alexandria, VA 22314
Telephone: (202) 742-8900
paul.clement@clementmurphy.com
harker.rhodes@clementmurphy.com
mitchell.pallaki@clementmurphy.com

*Counsel for Petitioner*